Westside Law APC
Cari Donahue Esq. SBN #273436
2541 State Street, Suite 101
Carlsbad, California 92008

(760) 687-9807

Attorney for Plaintiff Ziad Kabban and Tarek Kabban

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ziad Kabban and Tarek Kabban<br><br>Plaintiffs,<br><br>vs.<br><br>Aslan Residential V, LLC, PHH Mortgage Corporation, The Bank of New York, NDEX West, LLC and DOES 1 through 100, inclusive<br><br>Defendants | Case No. 13-CV-01409-H-blm<br><br>**Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order**<br><br>(Assigned to the Honorable Marilyn Huff) |

1. Introduction

This is a case about wrongful foreclosure in violation of the California Homeowners Bill of Rights. Specifically, Ziad Kabban and Tarek Kabban (herein referred to "Plaintiffs" are the victims of "dual tracking" in which a lender engages in loan modification negotiations while at the same time moving toward a non-judicial foreclosure sale as well as reckless and irresponsible underwriting standards and practices.

Therefore, immediate judicial intervention is required in order to preserve the

status quo pending "Plaintiffs" case being decided on its merits.

## 2.  Legal Standard

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction and requires that the party seeking relief show either "(1)a combination of likelihood of success on the merits and the possibility of irreparable harm, or(2)that serious questions going to the merits, are raised and 12 the balance of hardships tips sharply in favor of the moving party." Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS, 306 F.3d 842, 873(9th Cir.2002). "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1123 (9th Cir.2006).

The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. Granny Goose Foods, 415 U.S. at 439, 94 S.Ct. 1113 (1974); see also Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130-31 (9th Cir.2006). Here the court looks to the law at issue: **California's Homeowners' Bill of Rights**. That law provides that "It is the intent of the Legislature that the mortgage servicer offers the borrower a loan modification or workout plan if such a plan is consistent with its authority." *California Civil Code § 2923.6(b)*. If a borrower submits financials toward a loan modification effort, then the servicer/beneficiary/bank shall not conduct a trustee's sale while the application is pending and the servicer must make a written determination that the borrower is ineligible. *Civil Code § 2923.6(c)*.

Also under this new law, the mortgage servicer must establish a single point of contact and provide one or more direct means of communication with the single point of contact. Civil Code § 2923.7(a). That contact shall be responsible for communicating the process for

foreclosure prevention alternatives and coordinating receipt of all documents associated with same. *Id.* At (b)(1). Further, that point of contact shall have access to all current information and timely provide same to adequately inform the borrower. Id., (b)(2) and (3).

Finally, *Federal Rule of Civil Procedure* 65(b) provides that a court may issue a TRO without notice to the adverse party in limited circumstances where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant...." FED. R. CIV. P. 65 (b)(1)(A). The movant must also certify in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65 (b)(1)(B).

### 3. Legal Analysis

As stated in the concurrently~ filed declaration of Tarek Kabban as well as the Verified Complaint herein, Mr. Kabban has been residing at his home with his family since 2002. He initially defaulted on his loan during the fallout from the great Recession of 2008. Subsequently, Mr. Kabban sought bankruptcy protection under Chapter 13. That bankruptcy was dismissed on the basis of a divorce that is now finalized. In the instant case, PHH Mortgage Corporation ("PHH') refused to include Ziad Kabban as a household contributor notwithstanding his legal status of co-borrower as evidenced by the Deed of Trust that includes both borrowers. The negotiators at PHH refused to acknowledge the existence of Ziad Kabban who contributes to the monthly expenses at the "Subject Property".

Regardless, during approximately the past year, "Plaintiffs" and "PHH" <u>have been actively involved in loan modification negotiations</u>. These essentially took the form of requests for information by "PHH" timely responses by "Plaintiffs" providing the requested information, then a period of inaction, then follow-up communications from "Plaintiffs" then any one of a

litany of excuses from the bank for why the papers were not "processed" or the information needed to be resubmitted. Then the cycle would begin anew.

Under these facts, and as set forth in the California law quoted above, the bank's actions are clearly violative of the Homeowners' Bill of Rights. This is because they constitute "dual tracking" by utilizing the deceptive shell game tactic of providing a borrower with multiple points of contact. Eventually, the borrower is worn down and frustrated by the built-in bureaucratic inefficiencies of dealing with such a large organization that never is clear on what documents are requested or required by their underwriters or by the 'Investor'.

In the meantime, that same organization takes the required steps to force the borrower from his home. It is a classic pincher movement, the result of which is that the bank always wins.

Finally, the balance of equities tips heavily in favor of "Plaintiffs". The Great Recession also threatened to claim a number of banks, including "PHH" and its Investor, The Bank of New York. However, our federal government provided "PHH" and the "Bank of New York" billions of dollars to prevent them from sliding into insolvency.

With respect to notice, as detailed in the accompanying declaration of Cari Donahue, Esq., exhaustive efforts were made to put the bank on notice of these proceedings. This included faxing documents to opposing counsel for "Defendant Aslan" and the loss mitigation agents at "PHH" and the attorneys at NDEX West that represent both the "Servicer" and "Investor". Service also included faxing the papers to three separate fax numbers maintained by Defendants "PHH" as identified in its own letters and emails to "Plaintiffs".

### 4. Conclusion

"Plaintiffs" have clearly and unequivocally shown irreparable harm and a likelihood of prevailing on the merits, given what appears to be a clear violation of California law. Additionally, they have made exhaustive efforts to inform the defendants of this hearing. For this reason, it is respectfully submitted that the 'Plaintiffs' have met their burden and have satisfied

the requirements for a Temporary Restraining Order as set forth in the applicable case law and this court's own local rules.

Dated: June 20, 2013         /s/ *Cari Donahue*
                             Cari Donahue Esq.
                             Westside Law APC